CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 08 2016

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. 1:92-CR-051 |
| v. | ) | |
| | ) | |
| ANTHONY LEE BELCHER, | ) | |
| | ) | By: Michael F. Urbanski |
| Petitioner. | ) | United States District Judge |

## MEMORANDUM OPINION

Before the court are Petitioner Anthony Lee Belcher's ("Belcher") 28 U.S.C. § 2255 petition to vacate his sentence, ECF No. 53, and the United States' motion to dismiss, ECF No. 63. The court heard oral argument on November 17, 2016 and has reviewed the memoranda submitted by the parties.[1] See ECF Nos. 53, 63, 65, 66, and 68. For the reasons that follow, the court will **GRANT** Belcher's § 2255 motion, ECF No. 53, and **DENY** the United States' motion to dismiss, ECF No. 63.

I.

On August 23, 1993, the court sentenced Belcher to 180 months of incarceration following his guilty plea to a violation of 18 U.S.C. § 922(g)(1), charging him with being a felon in possession of a firearm.[2] Because the court determined that Belcher had three or more qualifying convictions under the Armed Career Criminal Act (the "ACCA"), he was subject to 18 U.S.C. § 924(e)'s mandatory minimum sentence of 180 months, rather the 120 month maximum sentence otherwise authorized under § 924(a)(2). The court sentenced Belcher to 180 months. Because Belcher was serving a state sentence at the time of his

---

[1] The court appreciates the thorough briefing and thoughtful argument submitted by counsel, which greatly aided resolution of the issues presented in this case.
[2] An official copy of the sentencing transcript is docketed at ECF No. 4.

1

federal conviction, he was not remanded to the custody of the Bureau of Prisons until August 1, 2005. ECF No. 19, at 2. Thus, Belcher remains in the custody of the Bureau of Prisons with an estimated release date in September 2018.

Neither the Pre-sentence Investigation Report ("PSR") nor the sentencing transcript indicate which of Belcher's prior convictions were deemed predicates leading to his enhancement under § 924(e). However, at sentencing, counsel for Belcher did not object to PSR's conclusion that he qualified as an Armed Career Criminal, subjecting him to § 924(e)'s 180 month mandatory minimum sentence. As a result, the court will consider all of Belcher's prior convictions to determine the ACCA's application. United States v. Pettiford, 612 F. 3d 270, 277-78 (4th Cir. 2010). These potential predicate convictions—all Virginia burglary—are referenced in the following paragraphs of the PSR with the year of conviction in parentheses: 30 (1981), 37 (1986), 38 (three convictions in 1988), 40 (1987), 42 (1988), and 46 (1992).[3]

## II.

Under 28 U.S.C. § 2255, a federal inmate may move the sentencing court to vacate, set aside, or correct the prisoner's sentence. Courts may afford relief where "the sentence was imposed in violation of the Constitution or the laws of the United States." § 2255(a). If the court determines the sentence was unlawfully imposed, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." § 2255(b).

---

[3] The court will instruct the clerk to docket the PSR.

2

A convicted felon found guilty of possessing a firearm faces a maximum sentence of 120 months. 18 U.S.C. § 924(a)(2). However, the ACCA provides for a mandatory minimum sentence of 180 months when a defendant was previously convicted of at least three prior serious drug offenses or violent felonies. § 924(e)(1). A violent felony is defined as:

> Any crime punishable by imprisonment for a term exceeding one year . . . that—
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> (ii) is burglary, arson, or extortion, involves use of explosives, ~~or otherwise involves conduct that presents a serious potential risk of physical injury to another.~~

§ 924(e)(2)(B).

In 2015, the Supreme Court invalidated the language stricken above after finding it void for vagueness. Johnson v. United States, 135 S. Ct. 2551 (2015)("Johnson II"). Though often parsed into three clauses—the force clause, the enumerated clause, and the residual clause—§ 924(e)(2)(B) is comprised of two numbered subsections. See Begay v. United States, 553 U.S. 137, 142-44 (2008). Specifically, the first subsection states:

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> ("Subsection (i)")

The second subsection states:

> (ii) is burglary, arson, or extortion, involves use of explosives, ~~or otherwise involves conduct that presents a serious potential risk of physical injury to another.~~
> ("Subsection (ii)")

Subsection (ii)—the only part of the statute at issue in Belcher's claim—lists several specific "enumerated offense" crimes—burglary, arson, extortion, and use of explosives—that

3

amount to violent felonies. Subsection (ii) goes on to encompass any crime that "otherwise involves conduct that presents a serious potential risk of injury."

The second portion of Subsection (ii)—the part of the statute deemed unconstitutional in Johnson II—is often called the "residual clause." The residual clause refers to crimes that are "similar to the listed examples in some respects but different in others—similar, say in respect to the degree of risk it produces, but different in respect to the 'way or manner' in which it produces that risk." Begay, 553 U.S. at 144. Accordingly, a crime, for ACCA purposes, cannot qualify as both an enumerated offense and as a residual offense. Id. A contrary interpretation interpretation would read the word "otherwise" out of Subsection (ii). Id. Rather, a predicate conviction is an enumerated offense, a residual offense similar to an enumerated offense, or neither. This understanding of § 924(e) was confirmed in James v. United States, 550 U.S. 192 (2007), and aligns with the court's conclusion in this case. In James, the Supreme Court determined that neither attempted burglary nor Florida's burglary statute were properly considered as an enumerated offense under Subsection (ii). Id. at 212-213. This is so because, as explained below, the enumerated offense of burglary has been defined by the Supreme Court in a manner that is not congruous with the way many states have written their burglary statutes.

Because Florida's version of burglary and attempted burglary posed a risk similar to the ACCA enumerated version of burglary, the government could rely "on the residual provision of [Subsection (ii)], which—as the court has recognized—can cover conduct that is outside the strict definition of, but nevertheless similar to, generic burglary." Id. Thus, when the court overruled James in Johnson II, it concluded that convictions enhanced under

4

the residual clause were improper, but did not affect enhancements pursuant to other portions of the ACCA, including the enumerated offense portion of Subsection (ii). Johnson II, 135 S. Ct. at 2563 ("We hold that imposing an increased sentence under the residual clause of the Armed Career Criminal Act violates the Constitution's guarantee of due process. Our contrary holdings in James and [United States v.]Sykes[564 U.S. 1 (2011)] are overruled. Today's decision does not call into question application of the Act to the four enumerated offenses, or the remainder of the Act's definition of a violent felony.").

Whether Virginia burglary falls within the enumerated clause portion or the residual clause portion of Subsection (ii) is dispositive in determining whether Johnson II reaches Belcher's conviction under the ACCA. Because the court determines that Virginia burglary—now and since Taylor v. United States, 495 U.S. 575 (1990), was decided—does not qualify as one of the enumerated offenses in Subsection (ii), Belcher's claim is timely, procedurally proper, and unlawful in light of Johnson II.

## III.

The federal habeas corpus statute under which Belcher seeks relief, 28 U.S.C.§ 2255(f), contains a one year statute of limitations. The government argues that Belcher's habeas petition is untimely as it was not filed within one year of the date his judgment became final. 28 U.S.C. § 2255(f)(1). Belcher contends that his petition was timely filed pursuant to § 2255(f)(3), as he filed it within one year of the Supreme Court's decision in Johnson II. Under § 2255(f)(3), the one year statute of limitations period begins on "the date on which the right asserted was initially recognized by the Supreme Court, if that right

5

has been newly recognized by the Supreme Court and made retroactive applicable to cases on collateral review."

The government responds that Johnson II has nothing to do with Belcher's case. Belcher was convicted of many Virginia burglaries, which the government contends were subject to the ACCA's enumerated clause, and Johnson II expressly held that it had no effect on the operation of the enumerated clause.

Because, as explained below, Virginia's burglary statute—now and since Taylor— does not fall within Taylor's definition of generic burglary, Belcher's convictions properly could have been deemed violent felonies only by way of the residual clause. Belcher's residual clause enhancement was not subject to attack until Johnson II was decided, after which he had one year to file his § 2255 claim. Because his habeas petition was filed on June 21, 2016, and Johnson II was decided on June 26, 2015, Belcher's petition is timely.

## IV.

The government next argues that Belcher's claim is procedurally defaulted because he did not previously preserve the issue. Belcher argues that default does not bar consideration of his Johnson II claim because he satisfies the cause and prejudice standard under Supreme Court precedent.

Generally speaking, a petitioner cannot raise an argument in a post-conviction proceeding that he did not raise earlier on direct appeal. See, e.g., Sanchez-Llamas v. Oregon, 548 U.S. 331, 351 (2006) (citing Massaro v. United States, 538 U.S. 500, 504 (2003); Bousley v. United States, 523 U.S. 614, 621 (1998). However, courts may excuse procedural default where a defendant is able to demonstrate "'cause' and actual 'prejudice.'" Bousley, 523 U.S.

6

at 622 (citing Murray v. Carrier, 477 U.S. 478, 485 (1986); Wainwright v. Sykes, 433 U.S. 72, 87 (1977)).

For the same reason that Belcher's claim is timely, he meets the cause requirement of procedural default. In short, because he could not challenge his sentence under the ACCA until Johnson II was decided, cause exists.

In Murray, the Supreme Court noted that cause, as could excuse procedural default, requires "some objective factor external to the defense [that] impeded counsel's efforts to comply" with the procedural requirements to raise a claim. 477 U.S. at 488. While Murray did not provide "an exhaustive catalog of such objective impediments[,]" it noted "that a showing that the factual or legal basis for a claim was not reasonably available to counsel" could constitute the required objective impediment. Id. (citing Reed v. Ross, 468 U.S. 1, 16 (1984)). Reed holds that cause is established "where a constitutional claim is so novel that its legal basis is not reasonably available to counsel." Id. In that discussion, Reed described three examples of such novelty:

> First, a decision of this Court may explicitly overrule one of our precedents. Second, a decision may overtur[n] a longstanding and widespread practice to which this Court has not spoken, but which a near-unanimous body of lower court authority has expressly approved. And, finally, a decision may disapprov[e] a practice this Court arguably has sanctioned in prior cases.

Id. at 17 (internal quotations and citations omitted). Reed noted that when a case falls into one of the first two categories and is given retroactive effect, "there will almost certainly have been no reasonable basis upon which an attorney previously could" have made the defaulted argument. Id. "Consequently, the failure of a defendant's attorney to have

7

pressed such a claim before a state court is sufficiently excusable to satisfy the cause requirement." Id.

Until the Supreme Court overruled James in Johnson II, Belcher had no ability to raise a challenge to his ACCA conviction. The James Court rejected a suggestion raised by Justice Scalia's dissent that the residual clause was unconstitutionally vague. "While ACCA requires judges to make sometimes difficult evaluations of the risks posed by different offenses, we are not persuaded by Justice Scalia's suggestion—which was not pressed by James or his amici—that the residual clause is unconstitutionally vague." James, 550 U.S. at 210, n.6. Between James and Johnson II, the Court continued to consider the application of the residual clause to a variety of state crimes, effectively precluding any constitutional challenge to it. See Begay, 553 U.S. at 145-48; Chambers v. United States, 555 U.S. 122, at 127-30 (2009); Sykes, 564 U.S. at 12-16. The court thus finds that the legal basis for Belcher's claim was not reasonably available to him before Johnson II was decided, establishing the cause element excusing his procedural default.

In reaching this conclusion, the court distinguishes the novelty of the challenge made available only after Johnson II was decided with the frequently litigated issue facing the Court in Bousley, upon which the government relies, as to whether mere possession of a firearm constituted use under 18 U.S.C. § 924(c)(1). There the Court noted that "[t]he argument that it was error for the District Court to misinform petitioner as to the statutory elements of § 924(c)(1) was most surely not a novel one. Indeed, at the time of petitioner's plea, the Federal Reporters were replete with cases involving challenges to the notion that 'use' is synonymous with mere 'possession.'" Bousley, 523 U.S. at 622 (internal citations

8

omitted). To support its holding that futility cannot constitute cause, the Bousley quoted Engle v. Isaac, 456 U.S. 107, 130 n. 35 (1982) for the proposition that "futility cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular time.'" But this case is a far cry from Engle. There the defendants did not object to a jury instruction that required the defendant in an Ohio murder case to prove self-defense. The Court noted that its decision in In re Winship, 397 U.S. 358 (1970), decided four and one half years before the first of defendants' criminal trials, "laid the basis for their constitutional claim," that the prosecution should bear the burden of disproving an affirmative defense. Engle, 456 U.S. at 131. "Where the basis of a constitutional claim is available, and other defense counsel have perceived and litigated that claim, the demands of comity and finality counsel against labeling alleged unawareness of the objection as cause for procedural default." Id. at 134.[4]

Nor does this case resemble the circumstances facing the Fourth Circuit in Pettiford, 612 F. 3d 270. There, defendant had at the time of sentencing a basis to challenge two of his predicate convictions, yet chose not to do so. Nothing about Pettiford's subsequent habeas challenge to those convictions concerned the situation presented here, where the claim springs from a novel change of law made retroactive by the Supreme Court on collateral review. In short, while the circumstances establishing cause in Reed were not available to Pettiford, they exist here.

The government likewise argues that the Fourth Circuit's opinion in United States v. Mikalajunas, 186 F. 3d 490 (4th Cir. 1999), supports a finding of no cause here. As with

---

[4] The Court in Reed expressly distinguished the factual setting of Engle for the same reason. Reed, 468 U.S. at 19-20.

9

Pettiford, however, Mikalajunas did not involve a right newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review. Rather, it concerned an argument on an unsettled area of law which counsel either did not recognize or chose not to pursue at sentencing. Id. at 493.

Unlike the circumstance in Bousley, Engle, Pettiford and Mikalajunas, the bolt of lightning from the clear blue sky that that struck down the residual clause in Johnson II was so novel that it was not reasonably available to counsel. As such, it constitutes cause to excuse procedural default.

Belcher easily establishes prejudice in this case. To show prejudice, a petitioner need show only that without an error, the proceedings would have been different. Strickler v. Greene, 527 U.S. 263, 289 (1999). In this case, had the sentencing court not applied the ACCA enhancement, Belcher's statutory maximum penalty would have been only ten years, as opposed to the fifteen year mandatory minimum sentence he received under the ACCA. Plainly, Belcher has established that the alleged error in his sentence worked to his actual and substantial disadvantage sufficient to establish prejudice. United States v. Frady, 456 U.S. 152, 170 (1982).

## V.

Before turning to the Virginia burglary statute at issue here, it is necessary to set the analytical stage. The categorical and modified categorical approach—the only element analyzing tools district courts wield to determine whether prior convictions amount to violent felonies under the ACCA—were forged in Taylor, 495 U.S. at 600-601. See Mathis v. United States, 136 S. Ct. 2243, 2251 (2016)("Taylor set out the essential rule governing

10

ACCA cases more than a quarter of century ago. All that counts under the Act, we held then, are the 'elements of the statute of conviction.'").

Thus, since Taylor, courts must begin with the statute of conviction's elements to determine if it aligns with the generic offense. The Court has repeatedly emphasized Taylor's categorical approach. See, e.g., James v. United States, 550 U.S. at 214 (explaining that court must avoid facts underlying prior convictions, but instead "look[] only solely to the elements[] as defined by [state] law"); Sykes, 564 U.S. at 7 (courts "consider the elements of the offense without inquiring into the specific conduct of this particular offender.").

As to the variant of the categorical approach known as the "modified categorical approach," the Supreme Court allows sentencing courts to consult a limited class of documents to determine which of alternative crimes within a statute a defendant was convicted. See Shepard v. United States, 544 U.S. 13, 26 (2005)("We hold that enquiry under the ACCA to determine whether a plea of guilty to burglary defined by a nongeneric statute necessarily admitted elements of the generic offense is limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information."). The Supreme Court has recently twice reversed courts that have misused this approach and improperly consulted Shepard documents to glean facts related to underlying convictions. See Mathis, 136 S. Ct. 2243, Descamps v. United States, 133 S. Ct. 2276 (2013). Both Mathis[5] and Descamps[6] make clear

---

[5] Mathis stated:

> "[T]he only [use of that approach] we have ever allowed," we stated a few Terms ago, is to determine "which *element[s]* played a part in the defendant's conviction."

11

that they are neither changing nor supplementing the modified categorical approach, merely correcting courts that have misapplied Taylor.

In Descamps, the Supreme Court reversed the Ninth Circuit Court of Appeals' conclusion that district courts could apply the modified categorical approach to California's burglary statute. 133 S. Ct. at 2293. The Court emphasized that Taylor only allowed application of the modified categorical approach to the "kind of statute [that] sets out one or more elements of the offense in the alternative." Id. at 2281. Where "one alternative (say, a building) matched an element in the generic offense, but the other (say, an automobile) does not, the modified categorical approach permits a sentencing court to consult a limited class of documents, such as indictments and jury instructions to determine which alternative formed the basis of the defendant's prior conviction." Id. The Supreme Court explained that the district court and Ninth Circuit improperly employed the modified

---

> Descamps, 570 U.S., at ——,133 S.Ct., at 2283, 2285 (emphasis added); see Taylor, 495 U.S., at 602, 110 S.Ct. 2143 (noting that the modified approach may be employed only to determine whether "a jury necessarily had to find" each element of generic burglary).

[6] Descamps stated the following:

> [o]ur caselaw explaining the categorical approach and its "modified" counterpart all but resolves this case. In those decisions, as shown below, the modified approach serves a limited function: It helps effectuate the categorical analysis when a divisible statute, listing potential offense elements in the alternative, renders opaque which element played a part in the defendant's conviction. So understood, the modified approach cannot convert Descamps' conviction under § 459 into an ACCA predicate, because that state law defines burglary not alternatively, but only more broadly than the generic offense.
> ...
> Taylor recognized a "narrow range of cases" in which sentencing courts—applying what we would later dub the "modified categorical approach"—may look beyond the statutory elements to "the charging paper and jury instructions" used in a case. Id., at 602, 110 S. Ct. 2143.
> ...
> Hence Taylor permitted sentencing courts, as a tool for implementing the categorical approach, to examine a limited class of documents to determine which of a statute's alternative elements formed the basis of the defendant's prior conviction.

12

categorical approach to a statute that was simply broader than generic burglary, rather than comprised of multiple crimes. Id. at 2287-91. The Court emphasized that consultation of Shepard documents is only appropriate to determine which of alternate crimes within a statute the defendant was convicted, not to glean the actual facts giving rise to the conviction. Id. In Descamps, facts showing the defendant's actions were within the bounds of generic burglary were irrelevant because California's burglary statute was overbroad as it did not require proof that the defendant broke and entered a structure. Id. at 2288-89. Where underlying crimes categorically are not violent felonies, district courts are precluded from using the modified categorical approach to determine whether the underlying convictions happened to fall within the generic offense. Id.

Mathis, the Supreme Court's most recent opinion on the modified categorical approach, again reversed a decision that violated Taylor's instruction. 136 S. Ct. at 2257. In Mathis, the Court addressed the divisibility of statutes. Id. at 2248-50. Divisible statutes are those that include differing elements that must be proven to sustain a conviction. Id. Such statutes invoke the modified categorical approach as they include multiple crimes. Id. However, statutes that merely contemplate alternative means of accomplishing a single crime are not divisible. Id. Rather, such statutes remain indivisible and under Taylor, are subject only to a purely categorical analysis. Id. Mathis addressed Iowa's burglary statute which encompassed unlawful entry of "any building, structure, or land, water or air vehicle." Id. at 2250 (quoting Iowa Code § 702.12). After consulting case law from Iowa's highest court, the Supreme Court concluded that the locations listed in the statute were alternate means of fulfilling the locational element. Id. Such alternate means did not permit use of the

13

modified categorical approach and rendered the statute overbroad under the categorical approach.

## VI.

Because Belcher's Virginia burglary convictions—now and since Taylor—only qualify as a predicate felonies by way of the residual clause, Belcher's claim is cognizable under Johnson II and his ACCA sentence must be vacated. During the course of Belcher's many convictions, Virginia Code § 18.2-90 was slightly amended, though not in a way that affects the analysis as to whether a conviction under the statute amounts to a violent felony.

At the time of his 1980 conviction, Virginia Code 18.2-90 stated:

> **Entering dwelling house, etc., with intent to commit murder, rape or robbery.**—If any person in the nighttime enter without breaking or in the daytime break and enter a dwelling house or an outhouse adjoining thereto and occupied therewith or in the nighttime enter without breaking or break and enter either in the daytime or nighttime any office, shop, storehouse, warehouse, banking house, or other house, or any ship, vessel or river craft or any railroad car, or any automobile, truck or trailer, if such automobile, truck or trailer is used as a dwelling or place of human habitation, with intent to commit murder, rape or robbery, he shall be deemed guilty of statutory burglary, which offense shall be a Class 3 felony; provided, however, that if such person was armed with a deadly weapon at the time of such entry, he shall be guilty of a Class 2 felony.

For all seven of Belcher's other burglary convictions, Virginia Code § 18.2-90 read:

> **Entering dwelling house, etc., with intent to commit murder, rape or robbery.**—If any person in the nighttime enters without breaking or in the daytime breaks and enters or enters and conceals himself in a dwelling house or an adjoining, occupied outhouse or in the nighttime enters without breaking or at any time breaks and enters or enters and conceals himself in any office, shop, storehouse, warehouse, banking house, or other house, or any ship, vessel or river craft or any railroad car,

14

> or any automobile, truck or trailer, if such automobile, truck or trailer is used a dwelling or place of human habitation, with intent to commit murder, rape or robbery, he shall be deemed guilty of statutory burglary, which offense shall be a Class 3 felony. However, if such person was armed with a deadly weapon at the time of such entry, he shall be guilty of a Class 2 felony.

In Taylor, 495 U.S. at 598, the Supreme Court defined generic burglary—burglary that qualifies as a violent felony under the ACCA—as "an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." In so holding, the Court noted that state crimes that allowed for burglary of places other than buildings, such as automobiles, swept more broadly than generic burglary, and were thus excluded from the definition of generic burglary. Id. at 591.

When viewed through the lens of the categorical approach, there is no doubt that Virginia Code § 18.2-90 sweeps more broadly than Taylor's definition of generic burglary. For example, both iterations of § 18.2-90 at issue encompass criminal activity that occurs in "any ship, vessel or river craft or any railroad car, or any automobile, truck or trailer, if such automobile, truck or trailer is used a dwelling or place of human habitation." Such language categorically takes § 18.2-90 beyond generic burglary.

However, as noted above, Taylor permits court to dig a bit deeper when a statute is comprised of multiple crimes, some of which may rise to the level of violent felonies. Before invoking the modified categorical approach, the court must decide the threshold question of whether § 18.2-90 is divisible in a legally significant way. In this case, the question is whether the disjunctive list of locations contained in § 18.2-90 amounts to alternative elements constituting different crimes or merely multiple means of committing a

15

single crime. If the statute describes multiple crimes, the court must then determine if any of the crimes would amount to generic burglary and thus qualify as ACCA predicates. As the Fourth Circuit noted in United States v. Cabrera-Umanzor, 728 F. 3d 347, 352 (4th Cir. 2013):

> General divisibility, however, is not enough; a statute is divisible for purposes of applying the modified categorical approach only if at least one of the categories into which the statute may be divided constitutes, by its elements, a violent felony. See Descamps, 133 S.Ct. at 2285 (explaining that the modified categorical approach provides a "mechanism" for comparing the prior conviction to the generic offense "when a statute lists multiple, alternative elements, and so effectively creates several different crimes.... [and] at least one, but not all of those crimes matches the generic version" (emphasis added)); [United States v.] Gomez, 690 F.3d [194,] 199 [(4th Cir. 2012)] ("[C]ourts may apply the modified categorical approach to a statute only if it contains divisible categories of proscribed conduct, at least one of which constitutes—by its elements—a qualifying conviction.").

The court concludes that Virginia Code § 18.2-90 is comprised of two distinct crimes. Because neither of the crimes in § 18.2-90 amounts to a violent felony, the court cannot use the modified categorical approach.

District courts must consult state law to determine whether a disjunctive list in a state statute amounts to means or elements. Mathis, 136 S. Ct. at 2256. Though the court knows of no Virginia appellate decision that expressly characterizes the list of locations in § 18.2-90 as means or elements, the Supreme Court of Virginia's decision in Graybeal v. Commonwealth, 228 Va. 736, 324 S.E.2d 698 (1985), teaches that the final portion of the geographic list in Virginia Code § 18.2-90—"any automobile, truck or trailer"—contains an added proof requirement. Specifically, Graybeal makes absolutely clear that to sustain a

16

conviction for breaking and entering into a trailer under § 18.2-90, the prosecution had to prove that the trailer was used as a dwelling or place of human habitation. Id. at 739, 324 S.E. 2d at 699. Thus <u>Graybeal</u> commands the conclusion that breaking and entering an automobile, truck or trailer is not merely an alternative means of violating § 18.2-90, but an element that requires additional proof—use as a dwelling or place of human habitation—not applicable to other locations listed in the statute.

The court is mindful of the Fourth Circuit's holding in <u>United States v. Foster</u>, 662 F. 3d 291 (4th Cir. 2011), but <u>Foster</u> was decided before <u>Descamps</u> and <u>Mathis</u> were decided. In <u>Foster</u>, the Fourth Circuit determined that § 18.2-90 was divisible into three clauses:

> The relevant Virginia statute defined breaking and entering as a crime under three separate clauses: (1) an "office, shop ... storehouse, warehouse, banking house, or other house"; (2) a "ship, vessel, or river craft or any railroad 294 car"; or (3) "any automobile, truck, or trailer ... [being] used as a dwelling or place of human habitation." Va. Code § 18.2–90 (1992) (amended 2004).

Id. at 293-94.

After considering <u>Graybeal's</u> holding that convictions under the third clause required an added proof requirement, the Fourth Circuit concluded that it could employ the modified categorical approach to determine which of the three clauses was invoked in the underlying conviction. Id. at 294-95. However, the Court's subsequent decisions in <u>Mathis</u> and <u>Descamps</u> suggest that <u>Foster</u> subdivided Virginia's burglary statute into one part too many. For the reasons that follow, the court concludes that the § 18.2-90 is only divisible into two crimes, both of which are broader than generic burglary. There is no need to employ the modified categorical approach to guide the court to one of the two crimes within § 18.2-90,

17

because neither crime amounts to a predicate under the ACCA. Cabrera-Umanzor, 728 F. 3d at 352.

As Mathis instructs, a statute is only divisible insofar as it gives rise to crimes with different elements. 136 S. Ct. at 2248-50. As noted above, § 18.2-90 includes two alternative crimes based on the location of the burglary. The first crime involves burglaries of "any office, shop, storehouse, warehouse, banking house, or other house, or any ship, vessel or river craft or any railroad car." The second involves burglaries of "any automobile, truck or trailer, if such automobile, truck or trailer is used a dwelling or place of human habitation." This is so because the second crime involves a proof requirement that the first does not. See Graybeal, 228 Va. at 739, 324 S.E. 2d at 699. Within each of these crimes, Mathis compels the conclusion that the alternative locations amount only to means not requiring proof of additional elements. For example, a Virginia prosecutor need not prove whether a burgled structure was a shop or a railroad car to sustain a conviction under § 18.2-90, so long as a fact-finder concluded that it was one of the physical places included in the first crime. However, if the jury concluded that the structure was an automobile or trailer, this alone is not enough to sustain a conviction. The prosecutor must also prove the automobile or trailer was used as a dwelling or place of human habitation. Because different elements are what makes statutes divisible, the first crime in § 18.2-90 cannot be parsed into additional subsections.

Because the second crime in § 18.2-90 only concerns burglaries of automobiles, trucks, and trailers, it clearly does not align with generic burglary. The first crime also is overbroad, because even though it criminalizes crimes that fall within the bounds of generic

18

burglary, it also encompasses burglaries of ships, vessels, and railroad cars. Because both of the crimes included in § 18.2-90 categorically are broader than generic burglary, the court need not invoke the modified categorical approach to determine which of the two crimes Belcher was convicted. Cabrera-Umanzor, 728 F. 3d at 352.

Accordingly, Virginia Code § 18.2-90, taken as a whole, has never qualified as a violent felony under the enumerated clause as it does not square with generic burglary. See James, 550 U.S. at 213 ("Rather, [the attempted burglary conviction] relies on the residual provision of that clause, which—as the Court has recognized—can cover conduct that is outside the strict definition of, but nevertheless similar to, generic burglary.")(citing Taylor, 495 U.S. at 598 n. 6). Virginia Code § 18.2-90 has only qualified as an ACCA predicate by way of the now-defunct residual clause. As Johnson II and Welch make clear, federal inmates whose sentences were enhanced as a result of the residual clause are entitled to relief under § 2255.

## VII.

For the reasons set forth above, none of Belcher's eight burglary convictions are violent felonies as the crimes included in § 18.2-90 categorically do not align with the elements described in Taylor. As a result, Belcher lacks the requisite convictions needed to sustain his ACCA designation. Pursuant to Johnson II, the court finds that the 180 month sentence Belcher received is unconstitutional as it is greater than the 120 month maximum penalty in § 924(a)(2). Belcher's § 2255 motion is **GRANTED**, and the government's motion to dismiss **DENIED**. An Order implementing this decision will be entered contemporaneously herewith.

19

Entered: 12/08/2016

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge